```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
VERONICA ALBERT-ROBERTS

                        Plaintiff,           10-CV-6636

            v.                           DECISION AND ORDER

GGG CONSTRUCTION, LLC,
GORDON DRUCKER, AND
EILEEN MCFADDEN,

                        Defendants.
_____
```

### INTRODUCTION

Plaintiff, Veronica Albert-Roberts ("Plaintiff"), brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981, the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112 *et seq.*, and the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"), alleging discrimination in the form of a hostile work environment and retaliation on the basis of her race and disability, against her former employer, GGG Construction, LLC ("GGG"), and two individuals, Gordon Drucker ("Drucker") and Eileen McFadden ("McFadden") (collectively, "Defendants"). (Docket No. 1.) Defendants now move for summary judgment, contending that Plaintiff has not established a prima facie case of a hostile work environment or a claim for retaliation and that they are entitled to judgment as a matter of law. Plaintiff opposes the motion, arguing that there are material issues of fact for trial. For the

reasons set forth herein, the Court grants Defendants' motion for summary judgment. Plaintiff's complaint is dismissed with prejudice.

## BACKGROUND

Local Rule of Civil Procedure 56(a)(1) requires that a party moving for summary judgment include with its motion a "separate, short, and concise statement...of the material facts as to which the moving party contends there is no genuine issue to be tried." See Local Rule 56(a)(1). "When a party has moved for summary judgment [] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992). Pursuant to Local Rule 56(a)(2), the opposing party must submit a separate statement which "shall include a response to each numbered paragraph in the moving party's statement...and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried."  Plaintiff has not responded to Defendants' Statement of Facts (Docket No. 28-1), but has filed her own affidavit and cites to the exhibits submitted by the Defendants in connection with this motion.  In light of Plaintiff's failure to properly controvert Defendant's Statement of Facts according to the

Local Rules, this Court will deem those factual assertions admitted to the extent they are supported by the record evidence. Accordingly, the following facts are taken from the Defendants' submission pursuant to Local Rule 56 and the Court's review of the entire record, and are viewed in the light most favorable to the Plaintiff, the non-moving party.

Plaintiff was employed by GGG as a part-time, nighttime office cleaner in a building owned and operated by GGG, the Executive Office Building, from November 2008 through October 20, 2009. Plaintiff and her husband, Donald Roberts, also leased space in the Executive Office Building for their store, Roberts Home Décor. During the relevant time period, GGG, an LLC, consisted of two members, Gordon Drucker and Gary Marcus, and it employed a full-time maintenance worker, a full-time office manager (Eileen McFadden), and three part-time office cleaners - Plaintiff, Michael McFadden (Eileen McFadden's husband) and Anthony Gibbons. Gibbons and the Plaintiff are black and the McFaddens are white.

Eileen McFadden oversees the cleaning work and does administrative work for GGG. Gibbons was Plaintiff's immediate supervisor. Plaintiff did not work at the same time as Eileen McFadden and she rarely saw her at work. During the time that Plaintiff was employed, Eileen McFadden complained to Drucker about the quality of the cleaning, but she did not specifically attribute the problems to the Plaintiff or any other cleaner individually.

Plaintiff alleges that Eileen McFadden criticized her work, but she does not describe any particular situation in which her work was criticized more frequently than any other cleaner.

At some point during Plaintiff's employment, Eileen McFadden had a discussion with Plaintiff's husband regarding the overuse of trash bags. McFadden stated, "either the bags have been stolen or they're using too many bags." Plaintiff and her husband interpreted this statement as an accusation that Plaintiff was stealing trash bags. Plaintiff's husband admits that McFadden did not actually accuse Plaintiff of stealing the bags and that she was speaking of the cleaning crew as a whole when she made this statement. The bags were moved for a period of time to prevent overuse, but they were later returned to their original location. In the narrative attached to her complaint to the New York State Division of Human Rights, Plaintiff stated that she confronted Eileen McFadden about the perceived accusation and Eileen stated "I am not saying you are stealing bags; I am saying that there are too many bags being used." One of Eileen McFadden's duties is to control cleaning inventory.

In early September 2009, Eileen McFadden confronted Plaintiff's husband at the Executive Office Building when Plaintiff was not at work regarding Plaintiff's statement to her co-worker that she would not be coming to work on labor day. Plaintiff's husband confirmed that she would not be coming in on labor day.

McFadden stated that Plaintiff needed to "follow the chain of command" and ask Drucker for the time off. The altercation escalated when McFadden learned that a garbage dumpster was left open the previous night. McFadden was angry, believing that Plaintiff and her husband left the dumpster open, and she stormed off and said something like "You fucking niggers...you all just have to do the job you've been fucking paid for."

McFadden denied using the word "nigger." According to the record, McFadden had not used racial epithets at the workplace prior to this occasion towards the Plaintiff, her husband, or other employees or tenants; and she did not use any racial epithet after this occasion.

Plaintiff and her husband complained to Drucker and Gary Marcus regarding this incident. Plaintiff contends that Drucker took a long time to respond to their complaint, but, at some point, he held a meeting at which he warned McFadden that she would be fired if she ever used language like this again. Plaintiff could not recall whether Drucker specifically threatened to fire McFadden, but both Drucker and McFadden testified to what took place at the meeting.

Drucker testified that during the summer prior to this incident he had been seeking quotes to outsource the cleaning services to a private company. Plaintiff, in the narrative attached to her complaint to the New York State Division of Human

Rights, stated that she knew that Drucker was planning to outsource the cleaning and that potential bidders had visited the Executive Office Building. On October 20, 2009, Plaintiff informed Drucker that she had been in a car accident and could not work that day. Drucker then decided that the cleaning should be outsourced immediately because they were shorthanded. Accordingly, the next day, Drucker engaged AG Cleaners to clean the Executive Office Building. Plaintiff and Michael McFadden (Eileen McFadden's husband and a white employee) were fired as cleaners. Anthony Gibbons, the principal at AG Cleaners was instructed to hire a new staff. Eileen McFadden remained in her position where she continued to oversee the cleaning, perform administrative work and handle complaints from tenants.

## **DISCUSSION**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. See Scott v. Harris, 550 U.S. 372, 379; 127 S.Ct. 1769, 1776 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment

is appropriate. See Scott, 550 U.S. at 379; 127 S.Ct. at 1776 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587).

The law is well established that "conclusory statements, conjecture, or speculation" are insufficient to defeat a motion for summary judgment. See Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996). The nonmovant cannot survive summary judgment simply by proffering "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or presenting evidence that "is merely colorable, or is not significantly probative." See Savino v. City of New York, 331 F.3d 63, 71 (2d Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citation omitted)). Rather, he "must set forth specific facts showing that there is a genuine issue for trial." See Anderson, 477 U.S. at 250 (quoting former Fed.R.Civ.P. 56(e)(2); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of...events is not wholly fanciful.")

   A.   ADA Claim

Defendants contend that Plaintiff failed to exhaust her administrative remedies with respect to her ADA claim. Def. Mem. of Law at 6-7. Plaintiff has not responded to this argument and

affirmatively states in her memorandum of law in opposition to the instant motion that she "seeks redress for discrimination based upon race, color and retaliation suffered in her capacity as an African American female employee of the defendant, GGG Construction, LLC ...." Pl. Mem. of Law at 1. Accordingly, the Court finds that Plaintiff has abandoned any claims she may once have had under the ADA, and any such claims are hereby dismissed with prejudice. See e.g. DiGiovanna v. Beth Isr. Med. Ctr., 651 F.Supp.2d 193, 208 (S.D.N.Y. 2009) (collecting cases for the proposition that a claim is deemed abandoned for plaintiff's failure to address it in opposition to defendant's summary judgment motion).

    B.    <u>Title VII Claims</u>

Defendants argue that Plaintiff's Title VII claims should also be dismissed because individuals may not be sued under Title VII, which applies only to an employer, defined as a "person engaged in an industry affecting commerce who has fifteen or more employees." Def. Mem. of Law at 5-6; see 42 U.S.C. §2000e(b); <u>Arculeo v. On-Site Sales & Marketing, LLC</u>, 425 F.3d 193, 195 (2d Cir. 2005). Defendant Drucker, a member of GGG, affirms that GGG construction had fewer than fifteen members and employees during the time that Plaintiff was employed. Drucker Aff. at ¶8. Plaintiff has not contested this fact and has not responded to this argument.

Because Plaintiff has not presented evidence to controvert the fact that GGG is not an "employer," as that term is defined in Title VII, her Title VII claims against GGG are dismissed with prejudice. Further, her Title VII claims against the individual defendants, Drucker and McFadden, are also dismissed with prejudice, as "individuals are not subject to liability under Title VII." Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004).

C. Hostile Work Environment

A plaintiff alleging a claim for a hostile work environment must establish[1] "[1] that the harassment was sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment, and [2] that a specific basis exists for imputing the objectionable conduct to the employer." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). The test to determine whether a plaintiff was the victim of a hostile work environment "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." Alfano, 294 F.3d at 374 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)).

---

[1] Plaintiff's claims under Section 1981 and the NYSHRL are analyzed under the standards developed for Title VII cases, and the Court will consider them concurrently. See e.g. Patane v. Clark, 508 F.3d 106 (2d Cir. 2007); Patterson v. Cnty, of Oneida, 375 F.3d 206, 225 (2d Cir. 2004).

The incidents of which a plaintiff complains "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Carrero v. New York City Housing Auth., 890 F.2d 569, 578 (2d Cir. 1989). The "[m]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to a sufficient degree to violate Title VII." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986).  In order for "comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity. Isolated incidents or episodic conduct will not support a hostile work environment claim." Richardson v. NY State Dep't of Correctional Serv., 180 F.3d 426, 437 (2d Cir. 1999), *abrogated on other grounds*.  The Court must look at the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether such conduct unreasonably interferes with the plaintiff's work performance. See Harris 510 U.S. at 23.

Plaintiff claims that the single use of the word "nigger" "coupled with the accusations of stealing cleaning supplies" and McFadden's criticism of her cleaning establish a prima facie claim for a hostile work environment. Pl. Mem. of Law at 5; Pl. Aff. at ¶49.  First, a review of the record indicates that McFadden did not specifically accuse the Plaintiff of stealing trash bags.

Rather, in a conversation with the Plaintiff's husband, McFadden stated "either the bags have been stolen or they're using too many bags." Donald Roberts Dep. at 38. The trash bags were moved to avoid overuse, but later moved back to their original location. Id. at 37-45. Plaintiff's husband testified that McFadden did not accuse the Plaintiff of stealing the bags herself, and that she was referring to the Plaintiff, Michael McFadden and Anthony Gibbons, the whole cleaning crew (black and white individuals), when she made this statement. Id. at 38-39. Further, in the narrative attached to her complaint to the New York State Division of Human Rights, Plaintiff stated that she confronted Eileen McFadden about the perceived accusation and Eileen stated "I am not saying you are stealing bags; I am saying that there are too many bags being used." Def. Exhibit A. The Court does not find that the incident with the trash bags supports Plaintiff's claim that she was subjected to a racially hostile work environment. The comment was not directed at the Plaintiff individually and it was not discriminatory in nature. There is no evidence that conduct of this nature occurred more than once, that Plaintiff was prevented from doing her job or that she felt threatened by this statement. See Cristoforo v. Lake Shore Cent. School Dist., 2011 WL 1082567, *2 (2d Cir. April 2, 2012)("While facially neutral incidents may be considered among the totality of the circumstances in any hostile work environment claim, there must be a circumstantial or other

basis for inferring that incidents [] neutral on their face were in fact discriminatory."(quoting <u>Alfano v. Costello</u>, 294 F.3d 365, 378(2d Cir.2002)); <u>See</u> <u>also</u> <u>Holt v. Roadway Package Systems, Inc</u>., 506 F.Supp.2d 194, 203 (W.D.N.Y. August 21, 2007).

Further, work criticism, alone, cannot establish a claim for a hostile work environment (<u>see</u> <u>Lucenti v. Potter</u>, 432 F.Supp.2d 347, 363 (S.D.N.Y.2006); and the work criticism of which plaintiff complains is vague, at best. Plaintiff has not described any specific factual situation in which she was criticized for her work, nor does she describe how this criticism contributed to a discriminatory and hostile work environment which interfered with her ability to do her job. Rather, when asked whether she was able to continue to do her job despite McFadden's alleged harassment, she stated, "absolutely." Pl. Dep. at 34. Also, although Plaintiff believes that other employees were not criticized as often as she was, she has not presented any evidence, other than her own speculation, to support this allegation. <u>See</u> <u>Chukwurah v. Stop & Shop Supermaket Co. LLC</u>, 345 Fed. Appx. 492 (2d Cir. 2009)(citing <u>Goenaga v. March of Dimes Birth Defects Found.</u>, 51 F.3d 14, 19 (2d Cir.1995); <u>Meiri v. Dacon</u>, 759 F.2d 989, 998 (2d Cir.1985)). Lastly, Plaintiff admits that "Ms. McFadden communicated to Drucker her complaints about cleaning, but the complaints were not attributed to any particular cleaner." Pl. Mem. of Law at 15; Drucker Dep. at pg. 34.

Plaintiff cites La Grande v. DeCrescente Distributing Co., Inc., 370 Fed. Appx. 206, 210-211 (2d Cir. 2010), in support of her argument that the single use of the word "nigger" may support a claim for a hostile work environment.  However, in La Grande, the Second Circuit found that the plaintiff sufficiently alleged a plausible claim to relief at the motion to dismiss stage, where he complained of co-workers making racial comments, he was threatened with termination, among other things, and a manager, on four occasions, physically threatened him and called him a nigger.  Id. Here, the record reveals only one instance of the use of the word "nigger" by McFadden, to Plaintiff's husband. The record does not indicate that the comment was made in a physically threatening manner or that McFadden used racial epithets on any other occasion to the Plaintiff, her husband, or any other person. The record also does not indicate that this instance occurred in the presence of McFadden's subordinates. Further, the other incidents of which Plaintiff complains were unrelated to this isolated use of the word "nigger." The trash bag incident was also isolated in nature and facially non-discriminatory, and both the work criticism and the trash bag incident were directed at the entire cleaning crews.

In sum, the Court finds that these circumstances, taken together, do not amount to the type of severe and pervasive conduct that is necessary to establish a prima facie claim for a hostile work environment.  The one racial epithet was isolated and was not

uttered in connection with the other instances harassment of which the Plaintiff complains - the trash bag incident and the work criticism. There is no evidence to suggest that Plaintiff was treated differently in terms of work criticism or the trash bag incident in relation to other white employees such that this Court could infer that this conduct was racially discriminatory. Further, Plaintiff testified that she was not prevented from doing her job based on McFadden's conduct and that it was also very rare that she had contact with McFadden at work. Pl. Dep. at 30, 34. Lastly, in response to Plaintiff's argument that Drucker did not respond to her complaints of discrimination, the record indicates that Drucker had a meeting with the Plaintiff and her husband and Eileen McFadden. Drucker Dep. at 25. After discussing the racial epithet incident, Drucker warned McFadden that if he heard of conduct like this in the future, she would be fired. <u>Id.</u> at 27.

Accordingly, this Court finds that Plaintiff has not established a prima facie case of a hostile work environment and her claims under 42 U.S.C. Section 1981 and the NYSHRL are dismissed with prejudice.

D.  <u>Retaliation</u>

Plaintiff alleges that was terminated one month after complaining to Drucker about McFadden's conduct.[2] Pl. Mem. of Law

---

[2] Plaintiff also states in her affidavit in opposition to the instant motion that "McFadden retaliated against us by telling tenants and patrons in the building not to come to, or shop at our business." Pl. Aff. at ¶60. Plaintiff does not cite to anywhere in the record to support her

at 8. The Court reviews Plaintiff's retaliation claim pursuant to the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this framework, the plaintiff must first establish a prima facie case of retaliation, which requires the plaintiff to establish that: (1) she participated in a protected activity known to the defendant; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)(citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)). Any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination" could constitute retaliation. Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 67-68 (2006).

Thereafter, the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, which, if proffered, places the burden on the plaintiff to prove that discrimination was a "substantial reason" for the employment action. See Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). Although the Second Circuit Court of

---

statement and she offers no other admissible evidence that McFadden ever spoke to tenants or patrons about the Plaintiff and her husband. Plaintiff's hearsay statements are insufficient to defeat the Defendants' motion for summary judgment. See Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Appeals has stated that "the burden that must be met by an employment discrimination plaintiff to survive a summary judgment motion at the *prima facie* stage is *de minimis*," Tomka v. Seiler Corp., 66 F.3d at 1308 (internal citations omitted), it has also noted that "[a] jury cannot infer discrimination from thin air." Norton v. Sams Club, 145 F.3d 114 (2d Cir.), cert. denied 119 S.Ct. 511 (1998).

For the purpose of this motion, the Court will assume that Plaintiff has established a prima facie case of retaliation: she complained in September 2009 of McFadden's conduct and she was fired on October 20, 2009, approximately one month after complaining of the alleged discrimination.

In explaining Plaintiff's termination, Defendant Drucker avers that in the summer of 2009, prior to Plaintiff's complaints, he decided to outsource the cleaning services. Drucker Aff. at ¶ 11. Plaintiff knew that Drucker was seeking to outsource the cleaning services and she knew that potential bidders had visited the Executive Office Building. Def. Exhibit A. Drucker states that he obtained quotes from three cleaning vendors, and decided to hire one of the vendors after Plaintiff advised him that she would be out of work due to injuries from a car accident. Drucker states that he needed to provide cleaning services to the tenants immediately because they were shorthanded. Id. at ¶¶ 11-14. GGG then fired Michael McFadden (a white employee) and the Plaintiff

and engaged AG Cleaning Services to clean the Executive Office Building. Id. at ¶¶ 15-16. Anthony Gibbons, is the principal of AG Cleaning Services, and he stayed on as a cleaner.  Id. at ¶¶ 15, 17.

Plaintiff states in her affidavit in support of this motion that Michael and Eileen McFadden continued to clean the building after she was fired.  Pl. Aff. at ¶ 80.  However, the record reveals that Eileen McFadden is employed in an administrative capacity at GGG and she oversees the cleaning crew, she is not a cleaner.  McFadden Dep. at pg. 5. Further, Drucker testified that Michael McFadden was fired at the same time that the Plaintiff was fired. Drucker Dep. at pg. 47.  Plaintiff offers nothing more than her own speculative belief that the McFaddens were employed as cleaners after she was terminated, which is insufficient to create a material issue of fact.

In a feeble attempt to rebut Drucker's legitimate, non-discriminatory reason for terminating her and Michael McFadden, Plaintiff states that Drucker referred to her and other African American employees as "colored," in his answer to her complaint to the New York State Division of Human Rights.  Accordingly, Plaintiff argues that her termination was a pretext for racial discrimination.  However, the Court does not find this evidence sufficient to show that Drucker's legitimate, non-discriminatory reason is a pretext for discimination. See Van Zant v. KLM Royal

Dutch Airlines, 80 F.3d 708 (2d Cir. 1996)("To defeat KLM's motion for summary judgment, Van Zant was obliged to produce not simply "some" evidence, but 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the discharge.'")(quoting Woroski v. Nashua Corp., 31 F.3d 105, 110 (2d Cir.1994)).

While referring to black people as "colored" may be politically incorrect, it does not, without more, lead to the conclusion (or even the inference) that Plaintiff's termination was the result of racial discrimination. There is no other evidence of discrimination on the part of Drucker that would support this claim. Plaintiff admits that she never heard Drucker utter a racial epithet. Pl. Dep. at 37. Further, Michael McFadden, a white employee and Eileen McFadden's husband, was fired on the same day that the Plaintiff was fired. Lastly, the Court notes that this statement was made after the Plaintiff was terminated, as she did not file her complaint with the New York State Division of Human Rights until October 20, 2009. Def. Exhibit A.

In sum, the Court finds that Plaintiff has not provided evidence of discrimination sufficient to rebut the Defendants' legitimate, non-discriminatory reason for her termination - that they planned, prior to her complaints, to outsource the cleaning and that when she could not work due to an injury, they outsourced

the cleaning so that they would not be shorthanded. Accordingly, the Court finds that Plaintiff has not presented evidence of retaliation such that a reasonable jury could find in her favor and her retaliation claims are hereby dismissed with prejudice.

## CONCLUSION

For the reasons discussed herein, this Court grants Defendants' motion for summary judgment. Plaintiff's complaint is hereby dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED**.

                                             S/ MICHAEL A. TELESCA
                                             HON. MICHAEL A. TELESCA
                                             United States District Judge

Dated:    Rochester, New York
          August 16, 2012